# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>JEROME BRUCE SEAMAN,<br><br>Defendant. | CR-12-69-GF-DLC<br><br><br>**FINDINGS AND<br>RECOMMENDATIONS** |

## I. Synopsis

Mr. Seaman should be required to repay the Fort Peck Community College the reimbursement he received and the wages he received in the total amount of $24,270.99 as restitution in this cause. Mr. Seaman should receive credit for restitution he already paid in the amount of $2,378.99 which the United States had not reduced from in its demand of $26,649.88.

## II. Status

Mr. Seaman plead guilty to Counts I (Theft from an Indian Tribal Organization Receiving Federal Grants), II (Federal False Claims Act) and III

(False Writings Affecting Federal Monies) of the Indictment which charged him with violating 18 U.S.C. §§666(a)(1)(A), 287, and, 1001(a)(3) respectively.  C.D. 23.   United States Chief District Judge Christensen sentenced Mr. Seaman on July 12, 2013 but reserved determining an amount of restitution for further proceedings. C.D. 51.  Judge Christensen referred the issue of restitution for findings and recommendations.  C.D. 54, 18 U.S.C. §3664 (d)(6).  The hearing on referral occurred August 6, 2013.  Both parties submitted memoranda and presented testimony.

### III.  Standards to Determine Restitution.

Restitution is mandatory for crimes involving fraud or deceit.  18 U.S.C. §3663A(c)(c)(1)(A)(ii).  The government has the burden to prove, by a preponderance of the evidence , the amount of loss the defendant's acts caused any given victim.  18 U.S.C. §3664(e), *United States v. Gamma Tech Indus*., 265 F. 3d 917, 927 (9th Cir. 2001). "A victim for restitution purposes is a person who has suffered a "loss caused by the specific conduct that is the basis of the offense of conviction".  Ibid, citing *Hughey v. United States*, 495 U.S. 411, 413.  The *Gamma Tech Indus.* court surveyed the causal boundaries of awardable restitution at pp. 927-8:

"In several cases we have concluded that losses did not result directly

from a defendant's criminal conduct, because either there was a unrelated, intervening cause, or the criminal conduct to which a defendant pleaded guilty did not cause the loss.  See, e.g., _United States v. Meksian,_ 170 F.3d, 1260, 1263 (9th Cir. 1999) (rejecting mere "but for" standard for proving loss and reversing restitution order in fraudulent loan application case because an intervening cause for the erroneous issuance of the loan, an inaccurate environmental report, was not directly related to the offense conduct); _United States v. Sablan,_ 92 F.3d 865, 870 (9th Cir. 1996) (reversing restitution order based on consequential damages, such as expenses arising from meetings with law enforcement officers investigating the crime, because such expenses were not necessary to repair damage caused by defendant's criminal conduct); _United States v. Reed,_ 80 F.3d 1419, 1421 (9th Cir 1996) (reversing restitution order **\*928** based on damage to private vehicles occurring during flight from police where the offense of conviction was illegal possession of a firearm by a felon); _United States v. Tyler,_ 767 F.2d 1350, 1351 (9th Cir. 1985) (rejecting restitution award under then 18 U.S.C. §3651 because losses based on depressed market prices were "too remote".  However, we have approved restitution awards that included losses at least one step removed from the offense conduct itself.  See, e.g., _United States v. Rich,_ 38 F.3d 1536, 1542 (9th Cir. 1994) (upholding, in conspiracy and mail fraud case, restitution based on victim's inability to use entire inventory of parts supplied by defendant because victim could not identify which parts were defective); _Koenig,_ 952 F.2d at 274-75 (upholding, in case involving conspiracy to produce and use counterfeit automated teller machine cards, restitution for the cost of reprogramming bank computers after defendants had stolen ATM account information). It is clear from our cases that the phrase "directly resulting" means that the conduct underlying the offense of conviction must have caused a loss for which a court may order restitution, but the loss cannot be too far removed from that conduct.  _See also United States v. Vaknin,_ 112 F3d 579, 590 (1st Cir. 1997)

("[T]he government must show not only that a particular loss would not have occurred but the for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)."). Defendant's conduct need not be the sole cause of the loss, but any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct. Compare *Meksian*, 170 F.3d at 1263, and *Tyler, 767 F.2d at 1351*, with *Rice*, 28 F.3d at 1542, and *Koenig, 952 F.2d at 274-75*. The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable."

Restitution returns the victim to the position they would have occupied absent the fraud. *U.S. v. Gordon*, 393 F.3d 1044, 1052 n.6 (9th Cir. 2004). Applying those standards to the facts shows that Mr. Seaman caused the college the loss the United states seeks to recover.

## IV. Facts.

Mr. Seaman was an instructor at Fort Peck Community College, a tribally chartered community college controlled by the Fort Peck Assiniboine and Sioux Tribes and receiving federal funds. Mr. Seaman plead guilty to receiving payment from the College after he had submitted falsified travel reimbursement documents relating to some 12 trips he took, purportedly on behalf of the College between December 2009 and March 2011. Mr. Seaman testified at the hearing. He admitted that records existed to support his receipt of $9,089.98 as a direct result of

fraudulent documentation.  C.D. 65, 68.

Agent Anthony Hoben testified on behalf of the United States.  He testified that the loss to the College caused by the fraudulent trips included the entire costs reimbursed in the amount of $19,668.88.  Agent Hoben testified that in addition, because of Mr. Seaman's misrepresentations, the College suffered the loss of the wages it paid Mr. Seaman for his services while Mr. Seaman was absent from the college on these trips.  Those wages amounted to $9,668.88.  The Defendant did not dispute the United States' calculation of wages attributable to the trips.  The United States did not credit Mr. Seaman for a payment of $2,378.99 that Mr. Seaman admittedly paid.  Mr. Seaman testified that he did indeed travel to the sites in question on some occasions and did perform some services of value of the type his employer contemplated and that he made reports afterward.

## V. Analysis.

**Wages:** The United States met its burden to prove by a preponderance of the evidence that the $9,668.88 in wages while traveling was a loss to the college caused by the defendant's fraudulent conduct.  18. U.S.C. §3664(e).  *U.S. v. Gordon, supra*, 393 F. 3d , 1052.   Mr. Seaman was on a mission of his own.  Any benefit to the College from his time on these trips was minimal and purely

incidental. The college lost Mr. Seaman's services during that time but paid for them because of Mr. Seaman's fraudulent misrepresentations. *United States v. Gamma Tech Indus., supra* at 927-8.

**Costs.** Mr. Seaman concedes that he owes $9,089.99 of the costs he was paid. Mr. Seaman testified about what he did on each trip. His testimony about his conduct at some of the meetings and results he accomplished for his employer was not credible and extremely vague. The evidence established that Mr. Seaman took the trips for reasons other than employment, falsified records for additional gain and was paid by his employer in the mistaken belief Mr. Seaman was doing his job. The evidence met the standard for loss causation summarized in *United States v. Gamma Tech Indus., supra* at 927-8. That he met with a supervisor after returning from any fraudulent trip does not make the trip less fraudulent. However, it was shown at the hearing that the Government's calculations failed to credit Mr. Seaman with amounts, $2,378.89, Mr. Seaman had already repaid because, once the fraud was revealed, the college deducted that amount. C.D. 68, P. 2. Mr. Seaman should receive credit for restitution he has already made.

## VI. Recommendation.

It is therefore recommended that Mr. Seaman be ordered to make restitution to the Fort Peck Community College in the amount of $24,270.99.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may serve and file written objections to the Findings and Recommendations within 14 days of their entry, as indicated on the Notice of Electronic Filing. 28 U.S.C. § 636(b)(1). A district judge will make a de novo determination regarding any portion of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

DATED this 14th day of August, 2013.

Keith Strong
United States Magistrate Judge